Mr. Dupree, is that the correct pronunciation of your current boss's name? Well, actually, it's my current boss's name. It happened. I guess in terms of Keisler. Is it Keisler or Kessler? Keisler. Okay. Exactly. It was a late-breaking development. You may proceed. Good morning, Your Honors. May it please the Court. My name is Mary Beth Kauffman. I'm appearing on behalf of the petitioner, Maria Nadia Patai. I would like to reserve three minutes for rebuttal. Simply put, this is a case in which the immigration judge ignored the plain language of the relevant regulation and longstanding Ninth Circuit precedent. Furthermore, the Board of Immigration Appeals, through summary affirmance, failed to address Ms. Patai's claims of procedural defects and the denial of due process. In his decision, the immigration judge clearly found that Ms. Patai had suffered past persecution in Romania. Once he made this finding, he was required by the regulations and Ninth Circuit precedent to presume that Ms. Patai is eligible for asylum. He is then required to engage in an individualized analysis, shifting the burden to the government to rebut the presumption by a preponderance of the evidence. We believe that it is clear that the immigration judge did not engage in any such analysis. Under the regulations, once the immigration judge found that Ms. Patai had suffered past persecution, she was entitled to the regulatory presumption of eligibility for asylum. The presumption, as I mentioned, can be rebutted if the government shows by a preponderance of the evidence that there has been a fundamental change in circumstances such that the applicant is no longer – no longer has a well-founded fear of persecution. The judge did not apply this presumption. Suppose we agree with you. I mean, the communist government that was presumably the cause of the persecution has long since passed. Is anything going to happen on a remand other than – other than the same conclusion? Yes, Your Honor. We believe that on remand that Ms. Patai should be afforded the opportunity under the regulations to show that she is eligible under 8 CFR 1208.13 little b, little 3i large b, which is showing that there is – once she has established past persecution, that there is a reasonable possibility that she may suffer other serious harm upon removal to her country. Ms. Patai has suffered very severe psychological and medical consequences of the persecution that the judge found that she had suffered. And the regulations were – were broadened by the Department of Justice to allow the judge to exercise discretion in cases of past persecution where the applicant has – either shows compelling reasons for an unwillingness to return based on the severity of the past persecution or a reasonable possibility of other serious harm. And that harm need not be based on a protected ground. And we believe that Ms. Patai has a very strong case under this standard. And furthermore, we would like the judge to consider the evidence. For example, in Ms. Patai's case, the judge failed to consider that the president at the time of the hearing was the former president, communist president, that had violently repressed dissidents during the period of communism and the transition to democracy. These are important changes in the government that were not considered by the judge and that we feel should be considered on remand. Could I interrupt you? I'd like to know exactly what persecution did she herself suffer? I understand her grandparents suffered, but what actual persecutory acts were inflicted on her? Well, the judge clearly found that she had suffered past persecution. She had – no, well, tell me. I'm asking you. What were the acts? Yes. Well, Ms. Patai's family was – I know the family was. What happened to her? She was under constant surveillance. She was what? Under constant surveillance. Was that an act of persecution? And followed – No. It isn't. Forget it. Tell me one act of actual persecution she suffered. She was detained. She was threatened. She was what? Detained. Pain as a result of what? Detained by the authorities. Held by the authorities. She was detained when? Let me just – if I may, Your Honor. There was a period also when she was young, when she was detained for her – with her parents. If I may find the cite. The memo I have says she conceded on cross-examination. She had never been arrested in Romania. She had not been placed under arrest, but she had been detained. And if I may, Your Honor – Was that an act of persecution? Cumulatively – Heaven's people were stopped all the time. If I may, Your Honor, the immigration judge made a clear finding. I know, but we don't have to accept that. I want to know what you're saying is the act of persecution. And I don't get it. Our position is that cumulatively, over the period from childhood until the time she left Romania, cumulatively, all of the acts that she suffered rose to the level of persecution, including death threats. No, but then you don't give me any acts. Threats against her life, Your Honor. You accumulate zero, zero, zero and say it adds up to something. What are the specific acts that add up? Your Honor, I would submit that this – the Ninth Circuit has held that death threats alone may constitute persecution. Well, what may? Death threats. What kind of threats? Death. So your position is that the detention, the death threats, the family situation all added up, and the immigration judge found there was past persecution. Absolutely. And the government has not challenged that. And the government has not challenged that. So that's something we – that's a baseline conclusion. The question then is whether, given the presumption that arises from that, whether that, in fact, has been rebutted. And the difficulty I have is even though the I.J. seemed to say things that sounded like the burden was being placed on her, if, in fact, the record with respect to country conditions, the I.J. did find that that, in effect, showed that there wouldn't be anything down the road, what are we supposed to do with that? Because that seems that you can divorce it from the possible evidentiary nuance that the I.J., you know, kind of elided. Well, Your Honor, it's our position that we can't look to whether the immigration judge's decision is supported by substantial evidence if we don't – if he hasn't laid out the standard of proof he is applying. So if he has not said the government has met its burden of a rebuttal by a preponderance of the evidence, and the petitioner has raised that claim before the Board of Immigration Appeals, the Board of Immigration Appeals has ignored that claim, we have not – we have no standard under which to judge a substantial evidence. Okay. So this is where, in the I.J.'s decision, where the I.J. says she has not demonstrated that she is going to be persecuted, that's what you're claiming is actually the misapplication of the standard. The only time that the immigration judge mentions the word presumption is in a quote of the State Department country profile. He makes no mention that the standard needs to be individually applied to her, that he must make an individualized analysis under Ninth Circuit case law comparing her situation to the specific country condition documents submitted to the government. Let me ask you, as a practical matter, if this is remanded because of the status of this record, and would the record be permitted to be reopened to look at the current conditions, which have only gotten better, not worse? Yes, Your Honor, we would – So in the end, it may be somewhat of a pyrrhic remand, but we don't know that. Well, as I mentioned, Your Honor, we believe that Ms. Patai is entitled to asylum under the regulations that allow an applicant who has been found to have been persecuted on account of a protected ground in the past to be granted asylum because of a reasonable possibility that she may suffer other serious harm. This is a regulation that was not mentioned by the immigration judge, was not mentioned by the government in its brief to this Court. Was it argued to the – was this a counsel case before the immigration judge? It was a counsel case before the immigration judge. And is there any evidence on which that regulation could be invoked before the immigration judge? The counsel in her closing statement before the immigration judge referred to the presumption that Ms. Patai was entitled to. And once that presumption is applied, the following regulations that the judge must follow clearly state that once an applicant has been found to have suffered past persecution, she may be granted, even where the government rebuts the evidence of eligibility. By a preponderance of the evidence, she may be eligible under the two additional standard in the same regulation, which is compelling reasons to argue that Ms. Patai may be eligible. And that's why I'm here today. Thank you. Thank you. I wanted to ask you, what were the death threats? What was she threatened? The threats were to her and her husband's home, telephonic, anonymous death threats because of their participation in the Christian Democratic Party. And what was the threat? To do, kill her if what? That she would, that they would be harmed if they continued their activities. They would be harmed or killed. That's right, Your Honor. If they did what? If they didn't cease their activities against the previously communist, the communist leadership that was at the time violently attacking the dissident groups. Thank you. Welcome back. Thank you. May it please the Court. Let me get right to the burden shifting issue since the Court had asked a number of questions about that. I grant that the I.J.'s decision does not explicitly refer to the presumption and the burden shifting, but I think it is quite clear from the face of the I.J.'s decision that he did not, in fact, place the burden on the plaintiff to show an absence of a burden. He did not place the burden on the plaintiff to show an absence of changed country conditions. Beginning on page 48 of the administrative record, that's the point at which the I.J. begins talking about the State Department reports, it's clear that he is looking to see whether there is affirmative evidence in the record that would rebut it. If this were a case where the I.J. had said the plaintiff has failed to prove that conditions in Romania have not changed, then I think that arguably would have been prejudicial to the State Department. And that would have been a pretty substantial error. Okay. Let me have you jump to page 51 where, in effect, that's what the I.J. is saying. The Court is compelled to conclude that she has not demonstrated that she is going to be persecuted if she is sent back to Romania. Yes, but, again, I don't see that as I mean, does she have that burden? Well, certainly she has the burden of proving persecution in the first place. Once she proves past persecution Well, and did the I.J. find past persecution? During her teenage years, yes, back in the 60s. Okay, so there was past persecution, so then she has a rebuttable presumption of future persecution, correct? That's correct. But then the I.J. says here that she has not demonstrated, meaning she has not met her burden as to future persecution. And so, I mean, you're obviously left with the record you're dealt, but that seems quite clear to me that the I.J. was mixing and matching the appropriate burdens. Now, whether it would come out the same way, I don't know. Well, I guess I don't quite share that same reading that you do, Your Honor. Well, if you could point me to where the anywhere in the opinion that the I.J. makes a determination that the government has met its burden and that it's done so with respect to a particularized application of country conditions. Well, with regard to Your Honor's latter point about a particularized application, I do think that appears throughout the I.J.'s four-page discussion beginning on 48 and going through page 51, where he is, as you can see, he basically takes statements from the country report and then applies it to the specific claims that the Petitioner is making. I think the I.J.'s approach is 100 percent consistent with the approach that this Court has prescribed in these cases, where this Court has said, provided that the I.J. simply doesn't quote the country condition and say case closed, but actually applies those changed conditions in the context of the individual's claim, that's sufficient. That's how the analysis should go forward. And I think, again, the fact that the I.J. has four pages of discussion of this pointing to specific evidence from the country reports shows that he was looking for affirmative evidence rebutting it. I think it's also important to emphasize, again, here the Petitioner's main argument is that the I.J. improperly overlooked evidence that she had submitted in the record, suggesting that the problems that her family and allegedly she experienced back in the 1960s still persisted even in the current era. And I think, of course, this Court's standard of review is not, is there evidence that a reasonable fact finder could have used to support the Petitioner's view, but rather this question is, does the evidence compel that conclusion? And I think that the State Department's 2002 report is dead on in this respect, in that it talks about how Romania, of course, well over a decade ago overthrew the repressive communist regime, it is now a multi-party democracy. To be sure, there are still problems, there are still sporadic instances of violence, but those instances of violence, as even in the Petitioner's materials show, aren't targeting foes of the 1960 communist regime or even foes of the 1990 communist regime. Rather, it's situations where the police are allegedly abusing street criminals who are in Romania, things of that nature. So to the extent that problems still persist in Romania, they're different in kind than the repression that the Petitioner allegedly suffered back in the 1960s. I think it is abundantly clear that at a minimum there's evidence to support the IJ's view that country conditions have changed and that a woman who was subjected to what, by all accounts, was a repressive communist regime in the 1960s faces a very different world in today's Romania. There's absolutely no question about that. And I think it was Judge Corman who had asked about essentially harmless error. In other words, would the result be any different? I think the answer to that is plainly no. We don't have a harmless error standard if there's a mistake in the administrative process. Well, the Petitioner, Your Honor will recall, has articulated her challenge as a due process violation, and certainly this Court looks to whether there's prejudice arising from that violation. And I do think that it would be largely an empty exercise were this Court to remand to say, have there been changed conditions in Romania? I think the evidence is absolutely overwhelming that the Romania of today is different in kind than the Romania of 1965. The IJ discussed at length the evidence supporting that. I mean, the IJ said, ironically, now we have a law in Romania that says you can't talk about communist ideology. That's exactly right. That's exactly right. Perhaps other people would have complaints at this point, but certainly not the Petitioner. So I think Your Honor is exactly right in that respect. I think the IJ's conclusion was sound. It was certainly supported by substantial evidence in this case. Thank you. Thank you. Do you have a minute for rebuttal? Could you go over with me again what the answer you gave in response to my question about you said even if there's a new government and conditions have changed, you could still, under the regs, you would have the burden or the opportunity to prove precisely what? That there is, quote, a reasonable possibility that she may suffer other serious harm upon removal to that country, which can include psychological harm. And Ms. Bataille's entire family has immigrated to Romania. And to the United States. She has no remaining family in Romania and very severe ongoing psychological issues as a result of the persecution that she suffered in Romania. So if I understand your argument correctly, even if she would not be subject to persecution because simply going back to a place where she had been persecuted would cause her psychological or emotional trauma, that could provide a basis for her to remain in the United States. That's correct, Your Honor. You're familiar with the cases that establish that kind of exception. The harm feared was atrocious. There are terrible things. If I may, Your Honor, clarify, there are two standards. What's that? There are two standards by which even if there is, even if the Court were to find that there are, there is no fear of future persecution, an eligibility for asylum might be established. The first, to which I believe you are referring, is compelling circumstances due to the severity of the past persecution. The second, which was more recently added to the regulations, is a reasonable fear of other serious harm. It's a less stringent standard. Thank you. Thank you.
judges: Noonan, McKeown, Korman